In the United States District Court
For the Northern District of Georgia
Atlanta Division

---

| | |
|---|---|
| Olivia Ramsey and William Stratmann, | |
| *On behalf of themselves and those similarly situated*, | Case No. |
| Plaintiffs, | Judge |
| | Magistrate Judge |
| v. | |
| Ayvaz Pizza, LLC and Shoukat Dhanani; | Jury Demand Endorsed Hereon |
| Defendants. | |

---

## Class and Collective Action Complaint

---

1.      Olivia Ramsey and William Stratmann, on behalf of themselves and all similarly situated individuals, bring this action against Defendants Ayvaz Pizza, LLC and Shoukat Dhanani ("Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and for unjust enrichment under the laws of Georgia and Texas.

2.      Defendants operate and/or operated over 300 Pizza Hut locations

across the United States (the "Defendants' Pizza Hut stores").

3.    Defendants repeatedly and willfully violated the Fair Labor Standards Act and unjustly enriched themselves by failing to adequately reimburse delivery drivers for their delivery-related expenses.

4.    Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA.

5.    All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiffs, have been subject to similar employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

6.    Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7.    Plaintiff Ramsey also brings this action on behalf of herself and current and former delivery drivers in Georgia, pursuant to Federal Rule of Civil Procedure 23, for unjust enrichment.

8.    Plaintiff Stratmann also brings this action on behalf of himself and current and former delivery drivers in Texas, pursuant to Federal Rule of Civil Procedure 23, for unjust enrichment.

## Jurisdiction and Venue

9.    Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has

jurisdiction over Plaintiffs' FLSA claims.

10.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff Ramsey worked in this district, Defendants do business in this district, and a substantial part of the events giving rise to the claims herein occurred in this district.

## Parties

**Plaintiffs**

**Olivia Ramsey**

11.      Plaintiff Ramsey is a resident of Douglasville, Georgia.

12.      Plaintiff Ramsey is an "employee" of all of the Defendants as defined by the FLSA.

13.      Plaintiff Ramsey has given written consent to join this action.

**William Stratmann**

14.      Plaintiff Stratmann is a resident of Texas.

15.      Plaintiff Stratmann was an "employee" of all of the Defendants as defined by the FLSA.

16.      Plaintiff Stratmann has given written consent to join this action.

**Defendants**

**Ayvaz Pizza, LLC**

17.    Defendant Ayvaz Pizza, LLC is a foreign limited liability company authorized to do business under the laws of the state of Georgia, with its principal place of business at 4415 Highway 6, Sugarland TX 77478.

18.    Upon information and belief, Ayvaz Pizza, LLC has owned and operated Pizza Hut Pizza stores nationwide throughout the relevant time period.

19.    Ayvaz Pizza, LLC is owned and operated by Shoukat Dhanani.

20.    Ayvaz Pizza, LLC is the entity or one of the entities that has entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

21.    Ayvaz Pizza, LLC is the entity that appears/appeared on Plaintiffs' paystubs for work they complete/completed for Defendants.

22.    Ayvaz Pizza, LLC may command where, when and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

23.    Ayvaz Pizza, LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.    Upon information and belief, Ayvaz Pizza, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures

4

relating to payment of minimum wages, and reimbursement of automobile expenses.

25.     Ayvaz Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

26.     At all relevant times, Ayvaz Pizza, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

27.     Ayvaz Pizza, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

28.     At all relevant times, Ayvaz Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

29.     Ayvaz Pizza, LLC's gross revenue exceeds $500,000 per year.

**Shoukat Dhanani**

30.     Shoukat Dhanani is a founder and CEO of Ayvaz Pizza, LLC.

31.     Shoukat Dhanani is a person who has entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

32.     Shoukat Dhanani may command where, when, and how much labor is performed by the delivery drivers at the Defendants' Pizza Hut stores.

33.     Shoukat Dhanani is individually liable to the Defendants' Pizza Hut stores' delivery drivers under the definitions of "employer" set forth in the FLSA because he owns and operates the Defendants' Pizza Hut stores, serves as a manager of Ayvaz Pizza, LLC, ultimately controls significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

34.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had financial control over the operations at each of the Defendants' Pizza Hut stores.

35.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

36.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had control over the Defendants' Pizza Hut stores' pay policies.

37.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

38.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Pizza Hut stores.

39.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

40.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to transfer the assets and liabilities of the Defendants' Pizza Hut stores.

41.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to declare bankruptcy on behalf of the Defendants' Pizza Hut stores.

42.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

43.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

44.     At all relevant times, by virtue of his role as founder and CEO of Ayvaz Pizza, LLC, Shoukat Dhanani had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

45.     The Defendants' Pizza Hut stores function for Shoukat Dhanani's profit.

46.     Shoukat Dhanani has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Potential Additional "Doe" Defendants**

47.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

48.     Upon information and belief, Shoukat Dhanani owns and/or operates, in whole or in part, a number of these entities that make up part of the Defendants' operation.

49.     Upon information and belief, Dhanani Group Inc., the Dhanani Group of Companies, Inc., and other entities owned or operated in whole or in part by Shoukat Dhanani may be liable for the claims asserted here.

8

50.    Upon information and belief, the franchisor, Pizza Hut, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

51.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

52.    Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

53.    Upon information and belief, Shoukat Dhanani has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Georgia wage and hour laws.

54.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

## Class Wide Factual Allegations

55.    During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

56.     The primary function of the Defendants' Pizza Hut stores was to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

57.     Defendants' Pizza Hut stores employ delivery drivers.

58.     Plaintiffs and the similarly situated persons that Plaintiffs seeks to represent are former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores.

59.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties—to deliver pizza and other food items to customers.

60.     Drivers at the Defendants' Pizza Hut stores worked "dual jobs."

61.     Delivery drivers' inside job duties were not completed simultaneously with their tipped job duties.

62.     Delivery drivers' inside job duties were not related to their tipped job duties.

63.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they work while completing deliveries.

64.      Defendants required delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and

10

other food items.

65.    Defendants required delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, storage costs, financing charges, cellphone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

66.    Pursuant to such requirements, Plaintiffs and other similarly situated employees purchased vehicles, gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, incurred storage costs, suffered automobile depreciation and damage, financing charges, and other vehicle-related expenses for the benefit of Defendants.

67.    Defendants reimbursed delivery drivers' automobile expenses based on a per-delivery rate or a per-mile rate.

68.    Defendants' Pizza Hut stores did not track or record the delivery drivers' actual automobile expenses.

69.    Defendants' Pizza Hut stores did not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

70.    Defendants did not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers work for Defendants.

11

71.     Defendants did not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers work for Defendants.

72.     Defendants did not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

73.     Defendants did not collect receipts of delivery drivers' automobile registration costs.

74.     Defendants did not collect receipts of delivery drivers' automobile financing or purchase costs.

75.     Defendants did not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Pizza Hut stores.

76.     Defendants' Pizza Hut stores did not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

77.     Defendants' Pizza Hut stores did not reimburse their delivery drivers for the actual expenses delivery drivers incur.

78.     Defendants' Pizza Hut stores did not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

79.     Defendants' Pizza Hut stores did not reimburse a reasonably approximate amount of delivery drivers' automobile expenses.

80.     After purchasing Defendants' Pizza Hut stores, Defendants first reimbursed their delivery drivers at a per delivery rate that regularly resulted in delivery drivers receiving less than the IRS standard business mileage rate.

81.     At some point during the relevant time period, Defendants began reimbursing delivery drivers at Defendants' Pizza Hut stores at a per-mile reimbursement rate for each mile driven that is less than IRS standard business mileage rate.

82.     When Defendants reimbursed delivery drivers using a per-delivery rate, it regularly resulted in delivery drivers being reimbursed an amount that was less than the IRS standard business mileage rate for each mile they drove.

83.     When Defendants reimbursed delivery drivers using a per-mile rate, Defendants reimbursed delivery drivers at Defendants' Pizza Hut stores less than the IRS standard business mileage rate.

84.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.     2019: 58 cents/mile
    b.     2020: 57.5 cents/mile
    c.     2021: 56 cents/mile
    d.     2022: 62.5 cents/mile
    e.     2023: 65.5 cents/mile

85.     The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate.

86.     Driving a vehicle for purposes of pizza delivery results in increased costs to the delivery drivers because it involves more starting and stopping, turning on/off the car, and general wear-and-tear from having pizza and other equipment in or on the car.

87.     The delivery drivers at Defendants' Pizza Hut stores advanced a business expense, interest free, to Defendants when they provided cars to use at work.

88.     Defendants benefited from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

89.     Defendants benefited from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

90.     Defendants benefited from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

91.     But for the delivery drivers using their own cars to make deliveries for Defendants' business, Defendants would have had to expend substantially more money and take on substantially more risk to operate their business.

92.     As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

93.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

94.     All of Defendants' delivery drivers had similar experiences to that of Plaintiffs. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

95.     Regardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

96.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

97.    Defendants have willfully failed to pay federal minimum wage to Plaintiffs and similarly situated delivery drivers at the Defendants' Pizza Hut stores.

98.    Defendants' policy of under-reimbursement unjustly enriched them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

99.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

100.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

### Plaintiffs' Individual Factual Allegations

**Olivia Ramsey**

101.    Plaintiff Ramsey had worked for Defendant Ayvaz Pizza, LLC as a pizza delivery driver at the Defendants' Pizza Hut stores from 2021 until August 14, 2023.Plaintiff Ramsey worked dual jobs—one inside the store, and one outside the store.

102.    Plaintiff Ramsey delivered pizza and other food items to Defendants' customers' homes and businesses.

103.    When she was not making deliveries, Plaintiff Ramsey worked inside the restaurant, completing tasks such as taking orders, prepping food, counting inventory, doing dishes, cashing customers out, and/or doing other tasks necessary for the operation of the restaurant.

104.    Plaintiff Ramsey's inside job duties were not completed at the same time as her on-the-road job duties.

105.    Plaintiff Ramsey's inside job duties were not related to her tipped job duties.

106.    At some point in 2022, Plaintiff Ramsey was promoted to shift lead during her inside hours.

107.    Plaintiff Ramsey's job duties as a shift lead were not related to her on-the-road job duties.

108.    Plaintiff's Ramsey's job duties as a shift lead were not completed at the same time as her on-the-road duties.

109.    Plaintiff Ramsey was required to use her own car to deliver pizzas.

110.    Plaintiff Ramsey was required to use her own cellphone when delivering pizzas.

111.    Plaintiff Ramsey made $9.00 per hour for the hours she worked on the road making deliveries.

112.    Plaintiff Ramsey was reimbursed per delivery while completing

deliveries for Defendants.

113.    Plaintiff Ramsey was reimbursed $1.00 per delivery.

114.    Plaintiff Ramsey was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

115.    Plaintiff Ramsey was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

116.    Plaintiff Ramsey was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, storage costs, automobile financing, and other vehicle-related expenses for the benefit of Defendants.

117.    Plaintiff Ramsey purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, storage costs, and other vehicle-related expenses for the benefit of Defendants.

118.    Defendants did not track the actual expenses incurred by Plaintiff Ramsey.

119.    Defendants did not ask Plaintiff Ramsey to provide receipts of the expenses she incurred while delivering pizzas and other food items for Defendants.

120.    Defendants' Pizza Hut stores did not collect receipts from Plaintiff

Ramsey related to the expenses she incurred while completing deliveries.

121.    Defendants did not collect receipts of Plaintiff Ramsey's gasoline purchases during weeks when she worked for Defendants.

122.    Defendants did not collect receipts of Plaintiff Ramsey's automobile maintenance, repair, and parts purchased or paid for during weeks when she worked for Defendants.

123.    Defendants did not collect receipts of Plaintiff Ramsey's monthly or annual automobile insurance costs.

124.    Defendants did not collect receipts of Plaintiff Ramsey's automobile registration costs.

125.    Defendants did not collect receipts of Plaintiff Ramsey's automobile financing or purchase costs.

126.    Defendants did not collect any other receipts from Plaintiff Ramsey related to the automobile expenses she incurred as a delivery driver at Defendants' Pizza Hut stores.

127.    Defendants did not track the cellphone expenses incurred by Plaintiff Ramsey.

128.    Defendants did not ask Plaintiff Ramsey to provide records of cellphone expenses he incurred while delivering pizzas for Defendants.

129.    Defendants did not collect receipts of Plaintiff Ramsey's cellphone

data plan expenses.

130.    Defendants did not reimburse Plaintiff Ramsey for her cellphone expenses.

131.    Defendants did not reimburse Plaintiff Ramsey based on her actual delivery-related expenses.

132.    Plaintiff Ramsey was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

133.    During all relevant times, Defendants have failed to adequately reimburse Plaintiff Ramsey for automobile and other job-related expenses.

134.    Plaintiff Ramsey regularly made approximately 2-3 deliveries per hour during the hours she worked as a delivery driver.

135.    Plaintiff Ramsey regularly drove approximately 8.5 miles round trip per delivery.

136.    In 2023, for example, the IRS business mileage reimbursement was $.655 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 8.5 miles per delivery, Defendants reimbursed Plaintiff $.12 per mile ($1.00 per delivery / 8.5 miles per delivery). As a result, Plaintiff estimates that Defendants under-reimbursed him by $.53 per mile ($.65-$.12=$.53), $4.50 per delivery ($.53 × 8.5 miles per delivery), and $11.25 per hour ($4.50 × 2.5 deliveries per hour).

137.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Ramsey minimum wage as required by law.

138.    Defendants have been unjustly enriched by Plaintiff Ramsey in that she used her own vehicle and incurred vehicle-related expenses for Defendants' benefit.

139.    Defendants have been unjustly enriched by Plaintiff Ramsey in that she used her own cellphone and incurred cellphone-related expenses for Defendants' benefit.

**William Stratmann**

140.    Plaintiff Stratmann has worked for Defendant Ayvaz Pizza, LLC as a pizza delivery driver at the Defendants' Pizza Hut stores in Texas from November 2019 to present.

141.    Plaintiff Stratmann works dual jobs—one inside the store, and one outside the store.

142.    Plaintiff Stratmann delivers pizza and other food items to Defendants' customers' homes and businesses.

143.    When he is not making deliveries, Plaintiff Stratmann works inside the restaurant, completing tasks like prepping food, doing dishes, taking out the trash, and/or doing other tasks necessary for the operation of the restaurant.

144.     Plaintiff Stratmann's inside job duties are not completed at the same time as his on-the-road job duties.

145.     Plaintiff Stratmann's inside job duties are not related to his tipped job duties.

146.     Plaintiff Stratmann is required to use his own car to deliver pizzas.

147.     Plaintiff Stratmann is required to use his own cellphone when delivering pizzas.

148.     When Ayvaz first took over Plaintiff Stratmann's store, Plaintiff Stratmann was paid $8.20 per hour while on the road making deliveries.

149.     At some point during 2021 or 2022, Plaintiff Stratmann began receiving $8.40 per hour while on the road making deliveries.

150.     At some point in 2022 or 2023, Plaintiff Stratmann began receiving $9.00 per hour while on the road making deliveries.

151.     Plaintiff Stratmann currently makes $9.00 per hour for all hours worked on the road making deliveries.

152.     Plaintiff Stratmann has been reimbursed on a per delivery and per mile basis at different times during his employment with Defendants.

153.     When Ayvaz first took over the store where Plaintiff Stratmann worked, Defendants reimbursed $1.25 per delivery.

154.    At some point in 2021 or 2022, Defendants began reimbursing Plaintiff Stratmann $1.75 per delivery.

155.    At some point in 2022 or 2023, Defendants began reimbursing Plaintiff Stratmann on a per-mile rate, ranging from approximately $.32 to $.35 per mile.

156.    Plaintiff Stratmann is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

157.    Plaintiff Stratmann is required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

158.    Plaintiff Stratmann is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, and other vehicle-related expenses for the benefit of Defendants.

159.    Plaintiff Stratmann purchases gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and other vehicle-related expenses for the benefit of Defendants.

160.    Defendants do not track the actual expenses incurred by Plaintiff Stratmann.

161.    Defendants do not ask Plaintiff Stratmann to provide receipts of the

expenses he incurs while delivering pizzas and other food items for Defendants.

162.   Defendants' Pizza Hut stores do not collect receipts from Plaintiff Stratmann related to the expenses he incurs while completing deliveries.

163.   Defendants do not collect receipts of Plaintiff Stratmann's gasoline purchases during weeks when he works for Defendants.

164.   Defendants do not collect receipts of Plaintiff Startmann's automobile maintenance, repair, and parts purchased or paid for during weeks when he works for Defendants.

165.   Defendants do not collect receipts of Plaintiff Stratmann's monthly or annual automobile insurance costs.

166.   Defendants do not collect receipts of Plaintiff Stratmann's automobile registration costs.

167.   Defendants do not collect receipts of Plaintiff Stratmann's automobile financing or purchase costs.

168.   Defendants do not collect any other receipts from Plaintiff Stratmann related to the automobile expenses he incurs as a delivery driver at Defendants' Pizza Hut stores.

169.   Defendants do not track the cellphone expenses incurred by Plaintiff Stratmann.

170.   Defendants do not ask Plaintiff Stratmann to provide records of

cellphone expenses he incurs while delivering pizzas for Defendants.

171.    Defendants do not collect receipts of Plaintiff Stratmann's cellphone data plan expenses.

172.    Defendants did not reimburse Plaintiff Stratmann for his cellphone expenses.

173.    Defendants do not reimburse Plaintiff Stratmann based on his actual delivery-related expenses.

174.    Plaintiff Stratmann is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

175.    During all relevant times, Defendants have failed to adequately reimburse Plaintiff Stratmann for automobile and other job-related expenses.

176.    Plaintiff Stratmann regularly makes approximately 1-2 deliveries per hour during the hours he works as a delivery driver.

177.    Plaintiff Stratmann regularly drives approximately 5 to 7 miles round trip per delivery.

178.    In 2021, for example, the IRS business mileage reimbursement is $.56 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 6 miles per delivery, when Plaintiff was reimbursed $1.25 per delivery, Plaintiff estimates that Defendants reimbursed him $.208 per mile ($1.25 per delivery / 6 miles per delivery). Therefore, Plaintiff estimates that Defendants

under-reimbursed him by approximately $.35 per mile ($.56 - $.208), $2.11 per delivery (6 miles × $.35 per mile), and $3.17 per hour ($2.11 per delivery × 1.5 deliveries per hour).

179.    In the second half of 2022, for example, the IRS business mileage reimbursement was $62.5 per mile,. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 6 miles per delivery, when Plaintiff was reimbursed $1.75 per delivery, Plaintiff estimates that Defendants reimbursed him $.29 per mile ($1.75 per delivery / 6 miles per delivery). Therefore, Plaintiff estimates that Defendants under-reimbursed him by approximately $.335 per mile ($.625 - $.29), $2.01 per delivery (6 miles × $.335 per mile), and $3.02 per hour ($2.01 per delivery × 1.5 deliveries per hour).

180.    In 2023, for example, the IRS business mileage reimbursement is $.655 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Plaintiff's estimate of 9.5 miles per delivery, when Plaintiff was reimbursed $.32 per mile, Plaintiff estimates that Defendants under-reimbursed him by approximately $.335 per mile ($.655 - $.32), $2.01 per delivery (6 miles × $.335 per mile), and $3.02 per hour ($2.01 per delivery × 1.5 deliveries per hour).

181.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

182.    Defendants have been unjustly enriched by Plaintiff in that he used his

own vehicle and incurred vehicle-related expenses for Defendants' benefit.

183.    Defendants have been unjustly enriched by Plaintiff in that he used his own cellphone and incurred cellphone-related expenses for Defendants' benefit.

## Collective Action Allegations

184.    Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

185.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs claims are essentially the same as those of the FLSA Collective.

186.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

187.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully

reimburse for "tools of the trade."

188.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

189.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

190.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## Class Action Allegations

## Georgia Unjust Enrichment Class

191.    Plaintiff Ramsey brings the Second Count under the Federal Rules of Civil Procedure 23, on behalf of herself and a class of persons consisting of: consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut stores in the State of Georgia between the date four years prior to the filing of the original complaint and the date of final judgment in this matter ("Georgia Rule 23 Unjust Enrichment Class").

192.    Excluded from the Georgia Rule 23 Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of

the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Georgia Rule 23 Unjust Enrichment Class.

193.    The number and identity of the Georgia Rule 23 Unjust Enrichment Class members are ascertainable from Defendants' records.

194.    For the purpose of notice and other purposes related to this action, the Georgia Rule 23 Unjust Enrichment Class members' names and contact information are readily available from Defendants.

195.    Notice can be provided by means permissible under Rule 23 for the Georgia Rule 23 Unjust Enrichment Class members.

196.    The Georgia Rule 23 Unjust Enrichment Class members are so numerous that joinder of all members is impracticable.

197.    The disposition of the Georgia Rule 23 Unjust Enrichment Class members' claims as a class will benefit the parties and the Court.

198.    Upon information and belief, there are more than 40 Georgia Rule 23 Unjust Enrichment Class members.

199.    Plaintiff Ramsey's claims are typical of those claims which could be alleged by any class member in the Georgia Rule 23 Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by a Georgia Rule 23 Unjust Enrichment Class member in separate actions.

200.    Defendants have been unjustly enriched by Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class members for the same reason—each of them provided automobiles for use in their business at no cost to Defendants.

201.    Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

202.    By seeking to represent the interests of the Georgia Rule 23 Unjust Enrichment Class members, Plaintiffs are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of herself and their co-workers.

203.    Plaintiff Ramsey is able to fairly and adequately protect the interests of the Georgia Rule 23 Unjust Enrichment Class and have no interests antagonistic to the Georgia Rule 23 Unjust Enrichment Class.

204.    Plaintiff Ramsey is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

205.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their

common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Georgia Rule 23 Unjust Enrichment Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Georgia Rule 23 Unjust Enrichment Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Georgia Rule 23 Unjust Enrichment Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Georgia Rule 23 Unjust Enrichment Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

206.    This action is properly maintainable as a class action under Federal

Rule of Civil Procedure 23(b)(3).

207.    Common questions of law and fact exist as to the Georgia Rule 23 Unjust Enrichment Class that predominate over any questions only affecting Plaintiffs' and the Georgia Rule 23 Unjust Enrichment Class members individually and include, but are not limited to:

a.    Whether Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries for Defendants;

b.    Whether Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

c.    The nature and extent of Defendants' benefits achieved through requiring delivery drivers to incur vehicle expenses on Defendants' behalf;

d.    The manner and amount of reimbursement paid to Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class by Defendants;

e.    Whether Defendants collected and maintained records of Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class members' actual vehicle expenses;

f.    Whether Defendants accepted the benefits conferred on them by Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class;

g.    Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff Ramsey's and the Georgia Rule 23 Unjust Enrichment Class without compensating for it;

h.    The nature and extent of class-wide injury and the measure of damages for those injuries.

208.    In recognition of the services Plaintiff Ramsey has rendered and will continue to render to the Georgia Rule 23 Unjust Enrichment Class, Plaintiff Ramsey will request payment of a service award upon resolution of this action.

## Texas Unjust Enrichment Class

209.    Plaintiff Stratmann brings the Third Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Pizza Hut stores in the State of Texas between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("Texas Rule 23 Unjust Enrichment Class").

210.    Excluded from the Texas Rule 23 Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Texas Rule 23 Unjust Enrichment Class.

211.    The number and identity of the Texas Rule 23 Unjust Enrichment Class members are ascertainable from Defendants' records.

212.    For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

213.    The Texas Rule 23 Unjust Enrichment Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

214.    Upon information and belief, there are more than 40 Texas Rule 23 Unjust Enrichment Class members.

215.    The disposition of the Texas Rule 23 Unjust Enrichment Class members' claims as a class will benefit the parties and the Court.

216.    Upon information and belief, there are more than 40 Texas Rule 23 Unjust Enrichment Class members.

217.    Plaintiff Stratmann's claims are typical of those claims which could be alleged by any class member in the Texas Rule 23 Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by a Texas Rule 23 Unjust Enrichment Class member in separate actions.

218.    Defendants have been unjustly enriched by Plaintiff Stratmann and the Texas Rule 23 Unjust Enrichment Class members for the same reason—each of them provided automobiles for use in their business at no cost to Defendants.

219.    Plaintiff Stratmann and the Texas Rule 23 Unjust Enrichment Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

220.    By seeking to represent the interests of the Texas Rule 23 Unjust Enrichment Class members, Plaintiffs are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of herself and their co-workers.

221.    Plaintiff Stratmann is able to fairly and adequately protect the interests of the Texas Rule 23 Unjust Enrichment Class and have no interests antagonistic to the Texas Rule 23 Unjust Enrichment Class.

222.    Plaintiff Stratmann is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

223.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the

individual Texas Rule 23 Unjust Enrichment Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Texas Rule 23 Unjust Enrichment Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Texas Rule 23 Unjust Enrichment Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Texas Rule 23 Unjust Enrichment Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

224.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

225.    Common questions of law and fact exist as to the Texas Rule 23 Unjust Enrichment Class that predominate over any questions only affecting Plaintiffs' and

the Texas Rule 23 Unjust Enrichment Class members individually and include, but are not limited to:

    a.   Whether Plaintiff Stratmann and the Texas Rule 23 Unjust Enrichment Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries for Defendants;

    b.   Whether Plaintiff Stratmann and the Texas Rule 23 Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    c.   The nature and extent of Defendants' benefits achieved through requiring delivery drivers to incur vehicle expenses on Defendants' behalf;

    d.   The manner and amount of reimbursement paid to Plaintiff Stratmann and the Texas Rule 23 Unjust Enrichment Class by Defendants;

    e.   Whether Defendants collected and maintained records of Plaintiff Stratmann and the Texas Rule 23 Unjust Enrichment Class members' actual vehicle expenses;

    f.   Whether Defendants accepted the benefits conferred on them by Plaintiff Stratmann and the Texas Rule 23 Unjust Enrichment Class;

    g.   Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff Stratmann's and the Texas Rule 23 Unjust Enrichment Class without compensating for it;

    i. The nature and extent of class-wide injury and the measure of damages for those injuries.

226.    In recognition of the services Plaintiff Stratmann has rendered and will continue to render to the Texas Rule 23 Unjust Enrichment Class, Plaintiff Stratmann

will request payment of a service award upon resolution of this action.

## Causes of Action
## Count 1
## Failure to Pay Minimum and Overtime Wages – Fair Labor Standards Act
## (On Behalf of Plaintiffs and the FLSA Collective)

227.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

228.    Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked while on the road making deliveries.

229.    Defendants pay Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked on the road making deliveries.

230.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile-related expenses and have failed to properly reimburse Plaintiffs' and the FLSA Collective for said expenses.

231.    Plaintiff and the FLSA Collective's un- or under-reimbursed automobile-related expenses result in a deduction from the wages Defendants have paid them such that they are paid less than minimum wage or the required overtime rate in some or all workweeks.

232.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs' and the FLSA

Collective.

233.     Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

234.     As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

<h3 style="text-align:center">Count 2</h3>

<h3 style="text-align:center">Georgia Unjust Enrichment</h3>

<h3 style="text-align:center">(On Behalf of Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class)</h3>

235.     Plaintiff Ramsey restates and incorporates the foregoing allegations as if fully rewritten herein.

236.     The Georgia Rule 23 Unjust Enrichment Class members at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars and related equipment to perform work for Defendants.

237.     Defendants are aware of and have accepted the benefit conferred on them by Georgia Rule 23 Unjust Enrichment Class members.

238.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Georgia Rule 23 Unjust Enrichment Class members without commensurate compensation.

239.    Plaintiff Ramsey and the Georgia Rule 23 Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the four years preceding the filing of this complaint.

## Count 3

## Texas Unjust Enrichment

## (On Behalf of Plaintiff Stratmann and Rule 23 Texas Unjust Enrichment Class)

240.    Plaintiff Ramsey restates and incorporates the foregoing allegations as if fully rewritten herein.

241.    The Texas Rule 23 Unjust Enrichment Class members at the Defendants' Texas Pizza Hut stores have conferred a benefit on Defendants by using their own cars and related equipment to perform work for Defendants.

242.    Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Unjust Enrichment Class members.

243.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Unjust Enrichment Class members without commensurate compensation.

244.    Plaintiff Stratmann and the Rule 23 Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 2 years preceding the filing of this complaint.

**WHEREFORE**, Plaintiffs pray for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members.

B.      Unpaid minimum wages, overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff Ramsey as representative of the Georgia Rule 23 Unjust Enrichment Class, Plaintiff Stratmann as representative of the Texas Rule 23 Unjust Enrichment Class, and counsel of record as Class Counsel for the Classes.

E.      Liquidated damages under the FLSA.

F.      An award of restitution for the benefits conferred on and unjustly retained by Defendants to the Rule 23 Unjust Enrichment Classes.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

41

Respectfully submitted,

*/s/ Gary R. Kessler*
Gary R. Kessler P.C. (GA Bar# 416562)
2573 Apple Valley Road NE
Atlanta, GA 30319
Telephone: (404) 909-8100
gkessler@martensonlaw.com

and

Andrew R. Biller (pro hac vice application forthcoming)
Andrew P. Kimble (pro hac vice application forthcoming)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*abiller@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Gary R. Kessler*
Gary R. Kessler